WILLIAM M. THEISEN, APPELLANT, V.
KAREN S. THEISEN, APPELLEE.

708 N.W.2d 847

Filed January 31, 2006.    No. A-05-103.

Michael B. Lustgarten, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

Lisa M. Meyer and David D. Ernst, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellee.

INBODY, Chief Judge, and CARLSON and CASSEL, Judges.

CARLSON, Judge.

## INTRODUCTION

William M. Theisen appeals from an order of the district court for Douglas County denying his application to modify the decree dissolving his marriage to Karen S. Theisen. Under that decree, William was required to pay $15,000 per month in child support. On appeal, William argues that the trial court erred in failing to terminate his child support obligation. For the reasons set forth below, we reverse, and remand with directions.

## BACKGROUND

On June 15, 2000, the district court entered a decree dis - solving the marriage of William and Karen. Within that decree, William's child support was set out as follows:

> [William] shall have a child support obligation of $15,000.00 per month commencing July 1, 2000 and the

first day of the month thereafter. Said child support shall not be paid through the Clerk of the District Court of Douglas County and shall be paid as set forth in the Settlement Agreement entered into between the parties. Said child support shall continue until the youngest child reaches majority or until further order of the Court.

The relevant portion of the parties' settlement agreement states:

The parties agree that current monthly support payments of $15,000 are being made to [Karen] for the benefit of the minor Theisen children by the Trustee of the Theisen Second II Irrevocable Trust. Because of the agreement by the Trustee of the Theisen Second II Irrevocable Trust to make these monthly support payments until May, 2002, there is no need at this time for additional child support to be paid by either of the parties. However, the parties agree that if the Trustee of the Theisen Second II Irrevocable Trust shall at any time reduce or eliminate the monthly support payments of $15,000, or if the circumstances of the parties should change such that this payment amount is not adequate, either party shall be entitled to seek a modification of any decree entered concerning payment of child support by [William] and/or [Karen]. [William] reserves the right in any future child support proceeding to take a position as to the reasonable child support amount pursuant to the Nebraska child support guidelines.

The record shows that William and Karen are the parents of five children, four of whom were minors at the time of the parties' dissolution action: Crystal, born February 8, 1982; Arielle, born April 12, 1985; Jasmin, born December 6, 1985; and Cody, born October 16, 1987. In the decree, the parties were awarded joint legal custody of the minor children. Karen was awarded primary physical custody of Arielle and Jasmin, and neither party was awarded custody of Crystal or Cody, given that Crystal was "currently living on her own" and Cody "[wa]s presently under the jurisdiction of the Douglas County, Nebraska Juvenile Court."

The record shows that at the time of William and Karen's divorce, none of the minor children were residing with Karen in

her California home. As noted in the record, Crystal was living on her own, Arielle and Jasmin were at boarding school, and Cody was at a residential facility for children with behavioral problems. The record also shows that in addition to the $15,000 per month child support payments, the trust agreed to pay the children's living expenses and the trust purchased Karen's California home so that the children would have a place "to call their home."

Prior to entering into their settlement agreement, the parties received a letter from U.S. Bank, as trustee of the trust. In that letter, U.S. Bank indicated that the trust would pay Karen $15,000 per month to maintain a household for the Theisen children and that the trust would pay Karen this amount "for a period of 2 years, until May 1, 2002, at which time the distribution will be reevaluated." The letter further stated that in addition, the trust agreed to pay certain bills and expenses for the minor children, and that these expenses would be considered separate from the $15,000 monthly payment. The record shows that the trust began the $15,000 monthly payments on May 1, 2000, and continued making the $15,000 per month child support to Karen through December 2003.

In November 2003, William became aware that the trust was going to discontinue the $15,000 monthly child support payments. On November 25, William filed an application to modify his child support obligation, alleging that a material change in circumstances had occurred which warranted the termination of his child support obligation. William requested that the termination of his child support obligation be made retroactive to December 1, 2003, the first day of the month following the filing of his application to modify the decree. Subsequently, Karen filed a resistance to William's application to modify.

On November 22, 2004, a hearing was held. The record shows that at the time William filed his application to modify, Arielle, Jasmin, and Cody were still minors. However, by the time of trial, only Jasmin and Cody were still minors, and Jasmin turned 19 approximately 2 weeks after the November 22 hearing. The record also shows that subsequent to the entry of the parties' divorce decree, Arielle, Jasmin, and Cody continued to live away from home. At the time of the modification hearing, Arielle and

Jasmin were attending college and coming back to Karen's home on breaks and Cody remained in a residential facility.

Although the trust discontinued the $15,000 monthly child support payment, the trust continued to pay all of Arielle's and Jasmin's major expenses—including tuition, room and board, and motor vehicle and travel expenses—in addition to Cody's costs at his residential facility. Specifically, from November 2003 through October 2004, the trust paid the sum of $221,957.56, or $18,496.46 per month, for the benefit of Arielle, Jasmin, and Cody. Karen presented evidence showing that for the year 2004, she had spent an average of approximately $1,000 per month on these three children.

William testified that at the time he entered into the settlement agreement, he was supporting himself by liquidating his $1 million share of marital assets. William testified that his $15,000 monthly child support obligation was not set according to the Nebraska Child Support Guidelines using his income, but, rather, it was based on how much the trust was willing to pay. William testified that his adjusted gross income for 2003 was $591,531 from his involvement and ownership in five restaurants. The record shows that Karen was not employed at the time of the modification hearing. When asked if Karen needed $15,000 per month to support the minor children, she stated that if she continued to receive $15,000 monthly, she and the children could do more things together. Karen also testified that if Cody was living with her, she would have an increased need for support because Cody needs a lot of therapy and other assistance. Karen testified that she hoped that Cody would be able to live with her at some point, but she did not state when that might be. The record shows that both parties signed the settlement agreement and were represented by counsel.

In an order filed January 14, 2005, the trial court overruled William's application to modify, stating that William remained obligated to pay Karen child support of $15,000 per month. Specifically, the court found that it had been contemplated that the trust would fund William's child support obligation for a finite period of time and that therefore, the trust's discontinuance of the $15,000 monthly child support payments did not constitute a material change of circumstances. William appeals.

## ASSIGNMENT OF ERROR

On appeal, William contends that the trial court erred in failing to grant his application to terminate his child support obligation.

## STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. *Wilkins v. Wilkins,* 269 Neb. 937, 697 N.W.2d 280 (2005).

## ANALYSIS

On appeal, William contends that the trial court erred in failing to grant his application to terminate his child support obligation. The trial court found that William remained obligated to pay child support of $15,000 per month, given that he failed to show a material change of circumstances. An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Wilkins v. Wilkins, supra.*

Karen contends that William remains obligated to pay $15,000 per month in child support until Cody reaches the age of majority, referencing the portion of the decree which states:

> [William] shall have a child support obligation of $15,000.00 per month commencing July 1, 2000 and the first day of the month thereafter. Said child support shall not be paid through the Clerk of the District Court of Douglas County and shall be paid as set forth in the Settlement Agreement entered into between the parties. Said child support shall continue until the youngest child reaches majority or until further order of the Court.

We note, though, that this paragraph must be read in conjunction with the parties' settlement agreement which the decree references. The settlement agreement states in relevant part:

> The parties agree that current monthly support payments of $15,000 are being made to [Karen] for the benefit of the minor Theisen children by the Trustee of the Theisen Second II Irrevocable Trust. Because of the agreement by the Trustee of the Theisen Second II Irrevocable Trust to make these monthly support payments until May, 2002, there is no need at this time for additional child support to

be paid by either of the parties. However, the parties agree that if the Trustee of the Theisen Second II Irrevocable Trust shall at any time reduce or eliminate the monthly support payments of $15,000, or if the circumstances of the parties should change such that this payment amount is not adequate, either party shall be entitled to seek a modification of any decree entered concerning payment of child support by [William] and/or [Karen]. [William] reserves the right in any future child support proceeding to take a position as to the reasonable child support amount pursuant to the Nebraska child support guidelines.

Clearly, William, by filing a modification action, has exercised his right under the settlement agreement. That agreement was signed by both parties, who were represented by counsel. A consent decree is usually treated as an agreement between the parties. It is accorded greater force than ordinary judgments and ordinarily will not be modified over objection of one of the parties. *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). Stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004); *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002).

Additionally, we note that the settlement agreement's language giving either party the right to seek a modification of the decree pertaining to child support is in accordance with Nebraska law. Child support orders are always subject to review and modification. *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000).

Karen argues and the trial court found that the trust's discontinuance of the $15,000 per month child support payments to Karen does not constitute a material change of circumstances. Specifically, the trial court found that "it was contemplated between the parties that the Theisen children's trust would fund [William's] obligation to pay child support for a finite period of time."

We disagree with the trial court's findings. At the modification hearing, William offered evidence, without objection, showing that prior to entering into the parties' settlement agreement, they received a letter from U.S. Bank, as trustee of the trust. In that letter, U.S. Bank indicated that the trust would pay Karen $15,000 per month to maintain a household for the Theisen children "for a period of 2 years, until May 1, 2002, at which time the distribution will be reevaluated." The record also shows that the trust began paying Karen $15,000 per month on May 1, 2000, and made such payments through December 2003—for over 3½ years.

Therefore, it is clear that the parties included the provision allowing either party to modify upon certain conditions, not because the trust's payments were for a certain time, but because the length of the trust's payments was uncertain or speculative. The parties' agreement regarding a subsequent modification is an acknowledgment by both parties that if the trust stopped making the payments, or if the payments continued but were inadequate, a material change of circumstances had occurred.

Additionally, the record clearly shows that the amount of $15,000 per month was not set according to the Nebraska Child Support Guidelines using William's income, but, rather, was the amount the trust was willing to pay Karen to maintain a household for the Theisen children. At the modification hearing, William testified that he did not have a source of income when he signed the parties' settlement agreement, but, rather, he was supporting himself by liquidating his $1 million share of the marital assets. For these reasons, we conclude that the trial court abused its discretion in finding that a material change in circumstances had not occurred. We go on to modify William's child support obligation accordingly, giving due deference to the best interests of the children.

■ The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child. *Gartner v. Hume*, 12 Neb. App. 741, 686 N.W.2d 58 (2004).

■ The Nebraska Child Support Guidelines are to be applied as a rebuttable presumption to both temporary and permanent

support, and any deviation from the guidelines must take into consideration the best interests of the children. *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005).

Neb. Rev. Stat. § 42-364.16 (Reissue 2004) states in part:

Child support shall be established in accordance with such guidelines, which guidelines are presumed to be in the best interests of the child, unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

The evidence shows that William's adjusted gross income for 2003 was $591,531 from his involvement and ownership in five restaurants. The record shows that Karen was not employed at the time of the hearing. Paragraph C of the Nebraska Child Support Guidelines states:

Deviations from the guidelines are permissible under the following circumstances:

. . . .

3. if total net income exceeds $10,000 monthly, child support for amounts in excess of $10,000 monthly may be more but shall not be less than the amount which would be computed using the $10,000 monthly income unless permissible deviations exist.

Therefore, the minimum amount of monthly child support William would pay under the guidelines using $10,000 as the parties combined monthly net income is $2,645 for three children, $2,326 for two children, and $1,654 for one child. Indeed, given William's income level, the appropriate child support amount might be an upward deviation were it not for the trust's payment of the children's expenses.

In the instant case, William contends that a different deviation from the guidelines must be considered, given that the trust is paying all of the children's significant expenses. Paragraph C(5) of the Nebraska Child Support Guidelines states that a deviation from the guidelines is permissible "whenever the ap - plication of the guidelines in an individual case would be unjust or inappropriate." William argues that because the trust is paying for all of the children's major expenses, his child support should be terminated.

The record shows that at the time William filed his petition to modify in November 2003, three children—Arielle, Jasmin, and Cody—were still minors, but that by the time of the modification hearing on November 22, 2004, only Jasmin and Cody were minors, and that Jasmin turned 19 approximately 2 weeks after the November 22 hearing. The record also shows that subsequent to the entry of the decree, Arielle, Jasmin, and Cody continued to live away from home. At the time of trial, Arielle and Jasmin were attending college and coming back to Karen's home on breaks and Cody remained in a residential facility.

Additionally, after the trust discontinued the $15,000 monthly child support payment, the trust continued to pay all of Arielle's and Jasmin's major expenses—including tuition, room and board, and motor vehicle and travel expenses—in addition to Cody's costs at his residential facility. Specifically, from November 2003 through October 2004, the trust paid the sum of $221,957.56, or $18,496.46 per month, for the benefit of Arielle, Jasmin, and Cody.

Karen argues that she has a continuing need for child support because she continues to incur expenses for the children aside from the amount that the trust pays. Karen also argues that her expenses would increase if Cody would come back to live with her, although she testified that she did not know when that might be. Karen presented evidence showing that from December 2003 through December 2004, she had spent $1,304.70 on Arielle (the amount incurred only before Arielle reached the age of majority), $4,382.32 on Jasmin, and $558.12 on Cody—for a total of $6,245.14.

Karen also entered into evidence an exhibit stating that from December 2003 through December 2004, she had incurred a total of $4,629 for the benefit of all five Theisen children. This amount includes restaurant expenses, "[s]chool [s]hopping," a medical bill, and some hotel expenses. None of the expenses delineate the specific children for whom the expense was incurred. Given that two children were no longer minors at the start of 2004, at most three-fifths, or $2,777.40, of $4,629 is attributable to the three Theisen children who remained minors in 2004. Therefore, from December 2003 through December 2004, Karen spent approximately $9,022.54 ($6,245.14 +

$2,777.40) on Arielle, Jasmin, and Cody, for a monthly average of $694.04.

Given the evidence that the trust is paying all of the major expenses of the minor children, we conclude that it is both equitable and in the children's best interests to deviate from the child support guidelines in setting William's child support obligation. The record clearly shows that ordering William to pay according to his income would be both unjust and inappropriate, given the evidence that the trust pays all of the children's expenses except some minor expenses still being incurred by Karen.

Therefore, on this record we set William's child support obligation using the evidence of Karen's expenses for the children. Given that Karen incurred approximately $700 in monthly ex-penses for the children from December 2003 through December 2004, we order William to pay Karen child support of $700 per month. William should pay this amount until Cody reaches the age of majority under Nebraska law, becomes emancipated, becomes self-supporting, marries, or dies, or until further order of the court.

Absent equities to the contrary, the modification of child support orders should be applied retroactively to the first day of the month following the filing date of the application for modification. *Erica J. v. Dewitt*, 265 Neb. 728, 659 N.W.2d 315 (2003). In a modification of child support proceeding, the child and custodial parent should not be penalized, if it can be avoided, by the delay inherent in our legal system. *Id.* Given the record before us, we can see no reason why William's child support obligation should not be applied retroactively, and yet we do not use December 1, 2003, the first day of the month following the filing date of William's application to modify the decree. This is because the trust made a $15,000 payment to Karen in December 2003. Therefore, we find that William's child support obligation should begin on January 1, 2004.

## CONCLUSION

After reviewing the record, we conclude that the trial court abused it discretion in failing to find that a material change of circumstances had occurred after the trust stopped paying Karen $15,000 per month in child support. We conclude that William's

child support obligation should be modified, and we reverse, and remand to the trial court with directions to set William's child support in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

## WORKSHEET 1. BASIC NET INCOME AND SUPPORT CALCULATION

| | | Mother | Combined | Father |
|---|---|---|---|---|
| 1. | Total monthly income from all sources (except payments received for children of prior marriages and all means-tested public assistance benefits)* | $ 0 | | $10,000 |
| 2. | Deductions** | | | |
| | a. Taxes*** | ___ | | ___ |
| | b. FICA | ___ | | ___ |
| | c. Health insurance**** | ___ | | ___ |
| | d. Retirement | ___ | | ___ |
| | e. Child support previously ordered for other children | ___ | | ___ |
| | f. Regular support for other children | ___ | | ___ |
| | g. Total deductions | ___ | | ___ |
| 3. | Monthly net income (line 1 minus line 2g) | 0 | | 10,000 |
| 4. | Combined monthly net income | | $10,000 | |
| 5. | Combined annual net income (line 4 times 12) | | 10,000 | |
| 6. | Percent contribution of each parent (line 3, each parent, divided by line 4)***** | 0% | | 100% |
| 7. | Monthly support from table 1 | | 2,645 | |
| 8. | Each parent's monthly share (line 7, times line 6, for each parent) | 0 | | 2,645 |

*Court will require copies of last 2 years' tax returns to verify "total income" figures and copies of present wage stubs to verify the pattern of present wage earnings, except where a party is claiming an allowance of depreciation as a deduction from income, in which case a minimum of 5 years' tax returns shall be required. Income should be annualized and divided by 12 to arrive at monthly amounts.

**All claimed deductions should be annualized and divided by 12 to arrive at monthly amounts.

***Deductions for taxes will be based on the annualized income and the number of exemptions provided by law.

****The increased cost to the parent for health insurance for the child(ren) of the parent shall be allowed as a deduction from gross income. The parent requesting an adjustment for health insurance premiums must submit proof of the cost of the premium.

*****In the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent as shown in item 6. The calculation of the average income shall be attached to this worksheet.

**WORKSHEET 5. DEVIATIONS TO CHILD SUPPORT GUIDELINES**

This worksheet may be completed by the Court and filed with the clerk in the event of a deviation or deviations under paragraph C. of the Child Support Guidelines.

|  |  | Mother | Father |
|---|---|---|---|
| 1. | Net income of the parties as computed under worksheet 1 | $ 00.00 | $10,000 |
| 2. | Combined monthly income | $10,000 | |
| 3. | Monthly support for _3_ child(ren) from table 1 | $ 2,645 | |
| 4. | Percent contribution of each parent | 0% | 100% |
| 5. | Each parent's monthly share (line 3 times line 4) | $ 00.00 | $ ,645 |

6. Further deviations (specify)

|  |  |  | Mother | Father |
|---|---|---|---|---|
| a. | Payments by Trust | (+/-) | $_____ | $ 1,895 |
| b. | _____ | (+/-) | $_____ | $_____ |
| c. | _____ | (+/-) | $_____ | $_____ |
| d. | Total | (+/-) | $_____ | $_____ |

|  |  |  | Mother | Father |
|---|---|---|---|---|
| 7. | Each parent's monthly share (line 5 above) | | $ 00.00 | $ 2,645 |
| 8. | (+/-) Line 6D | (+/-) | $ 00.00 | $ 1,945 |
| 9. | Adjusted child support obligations | | $ 00.00 | $ 700 |

Dated: _____

_____
Judge