IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HUMM V. PERAULT-HUMM


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DEANTONY M. HUMM, APPELLEE,

V.

EMILY C. PERAULT-HUMM, APPELLANT.


Filed September 5, 2017.    No. A-16-622.


Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed in part, and in part reversed and remanded with directions.

Jeff T. Courtney, P.C., L.L.O., for appellant.

Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellee.


INBODY AND RIEDMANN, Judges.

INBODY, Judge.

## I. INTRODUCTION

Emily C. Perault-Humm appeals from an order of the Sarpy County District Court modifying the parties' custody of their minor child and adopting the modification order and parenting plan drafted by DeAntony M. Humm. Emily asserts the district court erred in entering the order of modification, adopting the parenting plan which did not correspond to the parties' agreement, and failing to award her attorney fees and costs.

## II. STATEMENT OF FACTS

Emily and DeAntony were married on August 12, 2006. They are the parents of one child, Julian, born in November 2005. In March 2012, a decree was entered dissolving the parties' marriage accompanied by a parenting plan. The dissolution decree awarded DeAntony sole legal and physical custody of Julian, subject to Emily's visitation rights. Emily was ordered to pay $500

- 1 -

per month in child support. The decree provided that, based on the agreement and stipulation of the parties, DeAntony was "entitled to permanently remove [Julian] outside of the state of Nebraska and to the State of New York or the surrounding area." Further, the parties agreed that DeAntony was "entitled to relocate thereafter if for employment purposes." At some time after the dissolution decree was entered, DeAntony and Julian relocated to Virginia and they have lived there since at least 2014.

In December 2014, Emily filed a complaint to modify the dissolution decree which was later amended to seek modification of custody and child support and requesting attorney fees and costs. DeAntony filed an answer and counterclaim seeking, among other things, to place restrictions on Emily's parenting time. The district court scheduled the matter for trial on March 16, 2016.

After the parties reached an agreement, instead of proceeding with the scheduled trial, the parties "proved up" their agreement for the district court. In a series of questions between DeAntony and his attorney, DeAntony testified the parties agreed that he would have primary physical custody of Julian and the parties would share joint legal custody. DeAntony also testified the parties agreed that there would not be any future child support obligations. The parties agreed that DeAntony would provide Emily with Julian's Nebraska Education Savings Trust (NEST) account information and Emily would contribute $200 a month to that NEST account for Julian's college expenses. DeAntony also testified that he was able to provide for all of Julian's needs without any contribution from Emily. DeAntony testified he currently had Julian on his health insurance plan, he would continue to maintain Julian on that plan, and the parties' agreed to split Julian's nonreimbursed medical expenses "50/50."

DeAntony also testified that the parties agreed that "[a]ny extracurricular activities that Julian is placed in that [DeAntony and Emily] both agree to, [DeAntony and Emily] will divide those expenses 50/50[.]" DeAntony testified to the agreed-to parenting time schedule and that the parties agreed "Emily will not use alcohol on her parenting days when the child is with her, nor will she take the child to any establishment or function whose primary purpose is the service of alcohol." DeAntony also testified that he would provide Julian with a cell phone and that Emily could have reasonable phone contact with Julian at any time before 8 p.m. Emily testified that she heard the questions and answers between DeAntony and counsel, that what she heard constituted the parties' agreement, that it resolved all the issues raised in the pleadings, and the parties' agreement was in Julian's best interests. There was no agreement on attorney fees as to either party.

The district court approved the parties' agreement and directed DeAntony's counsel to prepare the order including attaching a child support calculation and a signed parenting plan.

On April 19, 2016, DeAntony filed a motion for entry of the order, claiming that the proposed order and parenting plan had been provided to Emily's counsel and that Emily's counsel had not responded. A hearing regarding the motion for entry of order was held on May 9, and was attended by counsel for both DeAntony and Emily, with counsel presenting arguments on the proposed parenting plan. Following the hearing, the district court took the matter under advisement.

On May 20, 2016, the district court filed the order of modification, as prepared by DeAntony's counsel. The order, as prepared by DeAntony's counsel and signed by the court, set forth that: no child support be paid by either party; work- or school-related childcare expenses incurred by either parent shall be paid 50 percent by each parent; the cost of extracurricular activities for Julian shall be paid 50 percent by each parent; all out-of-pocket medical expenses shall be paid 50 percent by each parent; ordered that on the first day of each month, Emily shall deposit $200 per month into a NEST account designated and controlled by DeAntony; awarded DeAntony primary physical custody of Julian; and awarded the parties joint legal custody of Julian. Attached to the order was a child support worksheet indicating that Emily earned a net monthly income of $1,348.19 and DeAntony earned a net monthly income of $8,696.57. According to the child support worksheet, Emily's child support obligation was $222 per month. The child support worksheet also indicated that Emily's percentage of the parties' combined net income was 13.42 percent and DeAntony's was 86.58 percent.

The district court also adopted the attached parenting plan as drafted by DeAntony's counsel. In discussing the parties' sharing legal custody, the parenting plan provided that "[i]n the event of an impasse [DeAntony] shall have the final say." The parenting plan also stated that Emily "shall not consume alcohol or allow others in her home to consume alcohol in Julian's presence" and that Emily "shall not enter into any establishment or attend any event whose primary purpose is the service of alcohol when Julian is with her." Further, the parenting plan indicated that "[t]he custodial parent shall give notice of his/her intent to change the minor child[]'s residence to the noncustodial parent by mail." More specifically regarding notice, the parenting plan provided that "notice shall include the custodial parent's return address, unless the custodial parent is living in or moving to an anonymous location because of safety concerns, in which case the return address of the custodial parent shall include only the custodial parent's county and state of address."

Emily has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Emily's assignments of error, consolidated and restated, are that the district court erred in (1) entering the modification order and parenting plan drafted by DeAntony because the order and plan did not accurately reflect the parties' agreement regarding (a) extracurricular expenses, (b) Julian's NEST account, (c) legal custody, (d) alcohol use, (e) change of address, and (f) telephone visitation; and (2) failing to award Emily attorney fees and costs.

## IV. STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard

and observed the witnesses and accepted one version of the facts rather than another. *Freeman v. Groskopf,* 286 Neb. 713, 838 N.W.2d 300 (2013).

## V. ANALYSIS

### 1. ERRORS REGARDING MODIFICATION ORDER AND PARENTING PLAN

### (a) Extracurricular Expenses

Emily contends the district court, in its modification order, did not adopt the "prior approval" language for expenses relating to Julian's extracurricular activities as agreed to by the parties. Emily argues that by failing to include the "prior approval" language, which allows her the ability to approve of Julian's extracurricular activities, the court has left open the ability of DeAntony to "financially terrorize" her. Brief for appellant at 8.

At the prove-up hearing, DeAntony testified that the agreement between the parties was that "[a]ny extracurricular activities that Julian is placed in that [DeAntony and Emily] both agree to, [DeAntony and Emily] will divide those expenses 50/50[.]" The stipulated language that the parties "agree to" Julian's extracurricular activities was not included in the modification order. The court erred in including the parties' stipulation regarding payment of Julian's extracurricular activities but failing to include in its order the parties' stipulated language that provided said activities must be agreed to by the parties. Therefore, we remand this cause to the district court for the inclusion of this language in the modification order.

### (b) NEST Account

Emily contends that the district court erred in including language regarding Julian's NEST account that said account was to be controlled by DeAntony. Emily argues that "[t]he 'control' language needs to be deleted from the order, and replaced with language to the effect that both parties have access to activity in the account, but neither party can withdraw funds from the account, unless both parties agree it is in Julian's best interest." Brief for appellant at 8.

The parties agreed that DeAntony would provide Emily with Julian's NEST account information and Emily would contribute $200 a month to that NEST account for Julian's college expenses. The parties' agreement that DeAntony would provide Emily with Julian's NEST account information establishes that Emily would be contributing to a NEST account that DeAntony had already set up for Julian and that DeAntony controlled. Emily's arguments on appeal to the contrary are without merit.

### (c) Legal Custody

Emily argues that the language in the parenting plan providing that, in the event of an impasse, DeAntony shall have the "final say" was not agreed upon.

The parties agreed that they would have joint legal custody of Julian. The Parenting Act requires every parenting plan to include "[p]rocedures for making decisions regarding the day-to-day care and control of the child consistent with the major decisions made by the person or persons who have legal custody and responsibility for parenting functions." Neb. Rev. Stat. § 43-2929(1)(b)(v) (Reissue 2016). Accordingly, Emily knew this was an issue the district court

would address in fashioning or approving a parenting plan. We cannot say the court abused its discretion in granting DeAntony final decisionmaking authority in the event of an impasse.

### (d) Alcohol Use

Emily claims that DeAntony's "attempt[s] to manipulate the order of modification by drafting and submitting to the district court an order that does not reflect the parties' agreement on alcohol use" and the fact that last minute changes to the agreement is "another example of [DeAntony's] apparent attempt to manipulate the judicial process in these proceedings and to exercise control over Emily's parenting time of Julian." Brief for appellee at 9.

At the prove-up hearing, DeAntony testified that the parties agreed that Emily would not use alcohol during her parenting time with Julian or take Julian to any establishment or function with the primary purpose of serving alcohol. However, the parenting plan adopted by the district court ordered that Emily "shall not consume alcohol or allow others in her home to consume alcohol in Julian's presence" and that Emily "shall not enter into any establishment or attend any event whose primary purpose is the service of alcohol when Julian is with her." We agree that the language adopted by the court included the language "or allow others in her home to consume alcohol in Julian's presence" which was not part of the parties' agreement presented on the record. Therefore, the court abused its discretion in including this prohibition in its order and we vacate this language from the parenting plan.

### (e) Change of Address

Emily contends that the section regarding "notification requirements in the event of a change in the minor child's residence" in the parenting plan was not addressed in the parties' agreement. A review of the parties' testimony "proving up" the parties' agreement confirms that there was no agreement concerning the language contained in the section of the modification order titled "Notification Requirements in the Event of a Change of the Minor Child's Residence." Consequently, the inclusion of this language in the court's order was error and must be stricken.

### (f) Telephone Visitation

Emily argues that the parenting plan failed to address the parties' telephone visitation with Julian, despite the agreement being placed on the record. At the hearing, DeAntony testified that he would provide Julian with a cell phone and that Emily could have reasonable phone contact with Julian at any time before 8 p.m. Upon remand, we direct the district court to include the parties' agreement that DeAntony will provide Julian with a cell phone and the parties can have reasonable phone contact with Julian at any time before 8 p.m.

### 2. ATTORNEY FEES AND COSTS

Emily also asserts the district court erred in not awarding her attorney fees and costs. Emily's argument on this issue merely consists of a restatement of the assigned error and, therefore, does not constitute the required argument in support of the assigned error. An argument that does little more than to restate an assignment of error does not support the assignment and an appellate court will not address it. *State v. Mata,* 275 Neb. 1, 745 N.W.2d 229 (2008). Therefore, we decline to address this assignment of error.

Emily also requests attorney fees and costs for this appeal. A request for attorney fees and costs in an appellate court must comply with Neb. Ct. R. App. P. § 2-109(F). Emily failed to comply with this requirement. Therefore, her request is denied without prejudice to refile her request in conformity with the court rules.

## VI. CONCLUSION

The district court erred by adopting language contrary to the parties' agreement regarding extracurricular activities in its order on the basis of the parties' stipulation, including the prohibition regarding the use of alcohol by others in Julian's presence, including the section regarding "notification requirements in the event of a change in the minor child's residence" in the parenting plan, and failing to include the parties' agreement regarding reasonable telephone contact. The district court did not abuse its discretion in including language regarding Julian's NEST account and that said account was to be controlled by DeAntony, and in granting DeAntony final decisionmaking authority. For the foregoing reasons, we affirm in part, and in part reverse and remand with directions for the district court to enter a modification order and parenting plan consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

BISHOP, Judge, participating on briefs.